UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:11-CR-30-TBR

UNITED STATES OF AMERICA,                                                              PLAINTIFF

v.

MARCUS PROCTOR,                                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Marcus Proctor's *pro se* Motion Seeking Relief under 18 U.S.C. § 3582(c)(1)(A)—First Step Act, [DN 58], subsequent Motion Seeking Relief under 18 U.S.C. § 3582(c)(1)(A)—First Step Act, [DN 60], and Motion for Default Judgment, [DN 63]. The United States has responded, [DN 62]. Defendant did not file a reply, and this matter is ripe for adjudication. For the reasons stated herein, Defendant's Motion Seeking Relief under 18 U.S.C. § 3582(c)(1)(A), [DN 58], is **DENIED**, Defendant's subsequent Motion Seeking Relief under 18 U.S.C. § 3582(c)(1)(A), [DN 60], is **DENIED**, and Defendant's Motion for Default Judgment, [DN 63], is **DENIED**.

**BACKGROUND**

After entering a guilty plea, Defendant was convicted on July 10, 2012, on two counts of knowingly and intentionally possessing with the intent to distribute and distributing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts 1 & 2) and one count of knowingly and intentionally possessing with the intent to distribute a substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count 3). [DN 27]. He was sentenced to a

term of 188 months imprisonment and four years supervised release. *Id.* Defendant did not file a direct appeal of his conviction. On June 16, 2017, Defendant filed his initial § 2255 motion asking the Court to vacate, set aside, or correct his sentence. [DN 32; DN 33]. In this motion, Defendant challenged his classification as a career offender under the U.S. Sentencing Guidelines based on the Supreme Court decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016), and argued that "[i]n light of *Mathis*, Petitioner's convictions for possession of a controlled substance with intent to deliver and possession of a controlled substance no longer qualify as predicate offenses for the career offender enhancement." [DN 32]. The Court dismissed Defendant's § 2255 motion, finding that it was barred by the one-year limitations period and Defendant was not entitled to equitable tolling. [DN 36]. The Court declined to issue a certificate of appealability. [DN 36]. Defendant then filed a Motion for Reconsideration, [DN 38], which the Court denied. [DN 44]. Defendant applied for a certificate of appealability, but his request was denied. [DN 45].

Then, on December 31, 2018, Defendant filed a Motion to Reduce Sentence, arguing that Amendments 750 and 782—which lowered the base offense levels in USSG § 2D1.1— provided a basis for reducing his sentence pursuant to 18 U.S.C. § 3582(c)(2). [DN 46]. The Court denied Defendant's motion, stating that "[t]he defendant is not eligible for a reduction of his sentence because his original sentence was based on the career-offender guideline at USSG § 4B1.1. The Sentencing Commission's Amendments 750 and 782 lowered the guideline offense levels that apply to drug crimes but made no change in the career-offender sentencing range. (citations omitted). The 188-month sentence remains sufficient but not greater than necessary to satisfy the purposes of sentencing." [DN 52]. Defendant has now filed the two instant motions, seeking relief under 18 U.S.C § 3582(c)(1)(A)—The First Step Act, [DN 58; DN 60], and a Motion for Default Judgment, [DN 63].

**A. Motion for Default Judgment**

On May 10, 2021, Defendant filed a Motion for Default Judgment, [DN 63], stating that the Government failed respond to Defendant's motion for compassionate release. Therefore, Defendant requests that the Court grant his motion for compassionate release. *Id.*

Not only did the Government file its response to Defendant's motion for compassionate release on May 3, 2021, [*See* DN 62], a motion for default judgment is not the appropriate avenue for relief in this matter. Accordingly, Defendant's Motion for Default Judgment, [DN 63], is DENIED.

## LEGAL STANDARD

The compassionate release statute allows the Court to reduce the term of imprisonment and impose a term of probation or supervised release under certain narrow circumstances. Section 3852(c) provides that:

"The court may not modify a term of imprisonment once it has been imposed except that-

(1) In any case—

(A) ***the court***, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier ***may reduce the term of imprisonment*** (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), ***after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that***—

***(i) extraordinary and compelling reasons warrant such a reduction* . . .**"

18 U.S.C.A. § 3582(c)(1)(A) (emphasis added). "The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences."

*United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

Upon satisfying the exhaustion requirement (or upon waiver by the government of this requirement), 18 U.S.C. § 3582(c)(1)(A) requires the Court to engage in a "three-step inquiry" in reviewing compassionate release motions. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry"

and have "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

After considering whether extraordinary and compelling reasons warrant a sentence reduction and whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, the district court proceeds to the third and final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)); *Elias*, 984 F.3d at 518 (citing *Jones*, 980 F.3d at 1101, 1108). Additionally, "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Elias*, 984 F.3d at 519.

**I. Exhaustion of Administrative Remedies**

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, --- F.Supp.3d. ----, No. 1:13-CR-186-6, 2019 WL 2716505, at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses."

*United States v. Marshall*, No. 3:19-CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

On June 11, 2020, Defendant sent a request for Compassionate Release or Reduction in Sentence pursuant to the First Step Act to the Warden of his facility, based on "Non-Medical Circumstances-Extraordinary or Compelling Circumstances." [DN 58 at 206]. The Warden responded denying Defendant's request on June 23, 2020. [*Id.* at 205]. The Government does not dispute that the exhaustion requirement is satisfied. [*See generally* DN 62]. Accordingly, the Court finds that Defendant has properly exhausted his administrative remedies under the First Step Act.

## II. Extraordinary and Compelling Reasons

In support of his request for compassionate release, Defendant argues that (1) ineffective assistance of counsel, (2) the two-level enhancement for obstruction of justice, (3) the Supreme Court's decision in *Mathis v. United States*, 136 S.Ct. 2243 (2016), and (4) his post-conviction rehabilitation constitute extraordinary and compelling reasons warranting relief. [DN 58; DN 60]. In response, the Government states that "[n]one of those is a basis for compassionate release. In addition, Proctor is a dangerous criminal and a flight risk." [DN 62 at 220]. Upon review, the Court finds that Defendant has failed to establish extraordinary and compelling reasons that warrant his release under 18 U.S.C. § 3582(c)(1)(A). Regardless, considering the totality of Defendant's circumstances, the Court finds that compassionate release would not be appropriate under 18 U.S.C. § 3553(a).

First, Defendant's claim alleging ineffective assistance of counsel in "advising him that signing an Open Plea of 5 to 10 years was in his best interest without explaining the risk of enhancements," [DN 60 at 214], is a matter that should have been, but was not, raised in Defendant's previous § 2255 motion and cannot now provide a basis for relief in the absence of

permission from the Sixth Circuit to file a second or successive habeas petition. *See* 28 U.S.C. § 2244(b)(3)(A); *United States v. Moore*, 481 F.Supp.3d 703, 712 (M.D. Tenn. 2020).

Second, Defendant contends that he received a two-level enhancement for obstruction of justice based on uncharged conduct in which Defendant is alleged to have assaulted an unnamed confidential informant. [DN 58 at 204; DN 28 at 75]. Defendant's argument here is moot because, as indicated in the Court's Statement of Reasons, the Court found that the two-level enhancement for obstruction of justice was not applicable in this case, thus it was not applied. [DN 28 at 79]. Moreover, even if this two-level enhancement had been applied, it would have been inconsequential to Defendant's total offense level of 31. This is because Defendant's total offense level relied on his status as a Career Offender under USSG § 4B1.1—which is unaffected by the obstruction enhancement. [DN 28 at 62]. Regardless of whether Defendant received the obstruction enhancement, his total offense level would be a 31.

Third, Defendant reiterates his prior claims that considering *Mathis*, his prior felony convictions for possession of a controlled substance with intent to deliver and trafficking in a controlled substance no longer qualify as predicate offenses for the career offender enhancement. [DN 60 at 213]. The Government sidesteps Defendant's argument, stating that the Court previously dismissed Defendant's claims regarding *Mathis v. United States* as untimely. [*See* DN 36]. However, in its previous opinion dismissing Defendant's § 2255 petition as untimely, the Court never reached the merits of Defendant's argument regarding the *Mathis* decision. As such, the Court has never decided that *Mathis* is not applicable; only that relief under § 2255 was unavailable. Now, Defendant is once again relying on the *Mathis* decision, but he is no longer seeking relief under § 2255. Instead, Defendant seeks relief pursuant to 18 U.S.C § 3582(c)(1)(A)—which is not time barred—and argues that extraordinary and compelling reasons

exist because under *Mathis*, his prior felonies no longer qualify as predicate offenses under the career offender enhancement. Thus, Defendant argues if he were sentenced today, he would not qualify as a career offender and his guideline range would be "84–120 months," which is 68 months less than the 188–235 guideline range that applied at the time of sentencing in 2012. [DN 60 at 213].

The Court disagrees with the Government's argument that Defendant cannot rely on *Mathis* to try and establish extraordinary and compelling reasons exist for his release. As stated above, even though Defendant's claims challenging his career offender status based on *Mathis* were previously dismissed, this was due to his untimely § 2255 petition. The Court did not address the merits, and Defendant's unsuccessful § 2255 petition has no bearing on whether Defendant may now rely on *Mathis* to establish extraordinary and compelling reasons for his release under § 3582(c)(1)(A). In *Mathis*, the Supreme Court held that a state crime cannot qualify as a predicate offense under the Armed Career Criminal Act (ACCA) if the elements of the state offense are broader than those of a listed general offense based on an "elements-only inquiry," not a modified categorical approach. If the elements of the state crime are broader than the generic offense listed under ACCA, the sentence cannot be enhanced, even if the actual conduct in question fits the generic offense listed. *See generally Mathis*, 136 S.Ct. 2243 (2016). The Supreme Court also focused on how to determine whether a statute is "divisible" and therefore requires the court to apply a "modified categorical approach."[1]

---

[1] When employing the textual, elements-only "categorical approach," courts compare only the elements of the prior offense to the elements in U.S.S.G. § 4B1.2 of the Guidelines while ignoring the particular facts of the case. However, a criminal statute that lists alternative ways an offense may be committed is deemed to be "divisible" if those alternatives constitute separate offenses, but not if they are simply "alternative means" of committing the same offense. When faced with a divisible statute, courts apply a "modified categorical approach," which means that courts review documents such as indictments and jury instructions to determine which particular offense the defendant was convicted of and, in turn, whether that offense qualifies under § 4B1.2. *United States v. Smith*, 960 F.3d 883, 887 (6th Cir. 2020).

It is true that the Supreme Court in *Mathis* made clear that its holding was required by decades-old precedent and hence, did not create a new rule of law. *Mathis*, 136 S.Ct. at 2257.[2] The Sixth Circuit expressly so held. *In re: Conzelmann*, 872 F.3d 375, 376–77 (6th Cir. 2017) (holding that the Supreme Court's holding in *Mathis* was not new, as it "was dictated by prior precedent (indeed two decades worth)," nor has *Mathis* been declared retroactive by the Supreme Court). Therefore, *Mathis* did not announce a new rule, nor has it been held to be retroactive by the Supreme Court. Accordingly, even if Defendant's § 2255 petition had been timely, he would not be eligible for resentencing under *Mathis*. However, despite this reality, the Court believes that *Mathis* is relevant to Defendant's current motion under § 3582(c)(1)(A).

The Court finds that Defendant's reliance on *Mathis* is analogous to someone filing for compassionate release due to changes under the First Step Act, because even though the First Step Act is not retroactive, the would-be impact of the First Step Act along with other factors may constitute extraordinary and compelling reasons to justify compassionate release. *United States v. Owens*, No. 20-2139, —-- F.3d — —-, 2021 WL 1811538, at *6 (6th Cir. May 6, 2021). In *Owens*, the Sixth Circuit held that, "in making an individualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied." *Id.*

The Supreme Court's decision in *Mathis* dealt with the Armed Career Criminal Act (ACCA), not the federal sentencing Guidelines. However, the primary focus of the Court's

---

[2] For a claim based on a recently issued Supreme Court decision interpreting a statute to be cognizable in a § 2255 petition, the holding must be retroactively applicable to cases on collateral review. *Wooten v. Cauley*, 677 F.3d 303, 307–08 (6th Cir. 2012). For retroactivity purposes, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (internal citations omitted). Adherence to this rule is particularly important in habeas cases as "[h]abeas corpus always has been a collateral remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review." *Id.* at 306.

decision *Mathis* is the process by which a district court evaluates prior offenses to determine if they qualify as predicates. *See Fields v. Ormond*, No. CV 17-40-DLB, 2018 WL 386160, at *3 (E.D. Ky. Jan. 11, 2018), aff'd, No. 18-5247, 2018 WL 4214314 (6th Cir. Aug. 21, 2018). Here, Defendant's two prior state felony convictions are 1) (Arkansas) possession of a controlled substance (cocaine) with intent to deliver, and 2) (Kentucky) trafficking in a controlled substance (cocaine) 1st degree. [DN 28 at 64–65]. Defendant was convicted of the first offense in 2004 and the second offense in 2005. *Id.*

To determine if Defendant's prior state offenses qualify as a "controlled substance offense" under the Sentencing Guidelines, U.S.S.G. § 4B1.2(b), courts employ the two-step categorical approach. *United States v. Smith*, 960 F.3d 883, 887 (6th Cir. 2020); *Mathis*, 136 S.Ct. at 2248. First, the court determines if the statute is divisible—that is, if it "lists elements in the alternative such that the statute 'comprises multiple, alternative versions of the crime.'" *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017) (quoting *Descamps v. United States*, 570 U.S. 254, 262 (2013)). If so, the court will employ the "modified categorical approach" and consult "a limited class of documents . . . to determine which alternative formed the basis of the defendant's prior conviction." *Id.* (alteration in original) (quoting *Descamps*, 570 U.S. at 257). At the second step, the court determines whether the offense, as described either by the entirety of an indivisible statute or by the relevant alternative of a divisible statute, matches § 4B1.2(b)'s definition of a "controlled substance offense." *Id.* at 753–54.

In *United States v. Williams*, No. 19-6410, 2021 WL 1149711, at *4 (6th Cir. Mar. 25, 2021) the court explained how to determine whether a prior state conviction counts as a predicate "controlled substance offense" under the Guidelines using the "categorical approach" (also known as the textual, "elements-only" approach):

Page **10** of **18**

> We first map out what conduct is criminalized under the guidelines' definition. Next, we do the same for conduct criminalized under the state law that led to the conviction. Finally, we overlay the two: if the outer edges of the state law—often the "least culpable conduct" that the law proscribes—extend past the guidelines' definition, then the conviction doesn't count; if, however, the boundaries of the state law and the guidelines' definition are coterminous, or the guidelines' definition sweeps more broadly, then the conviction counts. In other words, the guidelines must fully envelop the state law of conviction.

*Id.* (citing *United States v. Garth*, 965 F.3d 493, 495 (6th Cir. 2020); *see also Mathis*, 136 S. Ct. 2243, 2248 (comparing elements in the ACCA context). The Sixth Circuit has emphasized that "sentencing courts must 'presume that the conviction rested upon nothing more than the least of the acts criminalized.'" *United States v. Burris*, 912 F.3d 386, 406 (6th Cir. 2019) (en banc) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)). Moreover, the governing rule, is that courts look to "the nature of the prior state-law crime under federal law at the time of sentencing." *United States v. Bautista*, 989 F.3d 698, 703–04 (9th Cir. 2020); accord, *e.g.*, *United States v. Miller*, 480 F. Supp. 3d 614 (M.D. Pa. 2020); *United States v. Swinton*, No. 6:15-CR-06055-EAW, ⸺ F. Supp. 3d ⸺, ⸺ – ⸺, 2020 WL 6107054, at *7–8 (W.D.N.Y. Oct. 15, 2020). This conclusion comports with the goal of maintaining uniform, national federal sentencing policies. *See Bautista*, 989 F.3d at 703–04. The rule of lenity counsels this approach as well. *See generally United States v. Canelas-Amador*, 837 F.3d 668, 674 (6th Cir. 2016). Therefore, "when the federal 'offense' is provided by the sentencing Guidelines, like Section 4B1.2(b), we need look no further than . . . Section 1B.11." *Miller*, 480 F. Supp. 3d at 622.

USSG § 4B1.1(a) provides that a defendant is a career offender if, among other requirements, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Here, Defendant's argument turns on the meaning of "controlled substance offense," which is defined in USSG § 4B1.2(b) as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import,

export, distribution, or dispensing of a controlled substance [ ] or the possession of a controlled substance [ ] with intent to manufacture, import, export, distribute, or dispense." The term "controlled substance" is in turn defined by statute as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V." 21 U.S.C. § 802(6); *see also United States v. Ramos*, 814 F.3d 910, 919 (8th Cir. 2016).

Defendant argues that the elements of the Arkansas statute he was convicted under, Ark. Code. § 5-64-401(a) (2004)—to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance—are broader than the elements of a controlled substance offense under § 4B1.2(b), particularly the "delivery" element. [DN 32-1]. Thus, Defendant contends that "the mismatch of elements which are defined in § 5-64-101, in light of *Mathis*, should now save Mr. Proctor from the career offender enhancement." [DN 32-1 at 103]. The statutory definition of "deliver" or "delivery" in Arkansas included the actual, constructive, or attempted transfer from one person to another of a controlled substance. Ark. Code. § 5-64-101(f) (2004). Similarly, Defendant briefly states that the elements of the Kentucky statute for trafficking in a controlled substance in the first degree are also broader than the Guidelines because "it has conduct such as an offer to sell and transfer that sweep too broadly for the career offender enhancement." *Id.* Under 2006 Ky. Rev. Stat. § 218A.1412, "a person is guilty of trafficking in a controlled substance in the first degree when he knowingly and unlawfully traffics in a controlled substance that is classified in Schedules I or II . . ." The statutory definition of "traffic" in Kentucky was "to manufacture, distribute, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance." 2006 Ky. Rev. Stat. § 218A.010(34). Despite Defendant's contention, the Kentucky statute makes no mention of "offers" to sell and/or transfer. The Court finds that the elements of the Kentucky statute do not sweep more broadly than the relevant generic offense

under the Sentencing Guidelines. As such, this prior conviction properly serves as a predicate offense under the Guidelines.

Next, Defendant cites to the Fifth Circuit case, *United States v. Hinkle*, 832 F.3d 569, 576–77 (5th Cir. 2016), to support his argument that the "delivery" element of the Arkansas statute criminalizes a greater swath of conduct than the Guideline offense. [DN 32-1 at 104]. In *Hinkle*, the court held that "[t]he 'delivery' element of Hinkle's crime of conviction criminalizes a 'greater swath of conduct than the elements of the relevant [Guideline] offense.'" The court reasoned that the relevant portion of the Texas statute was indivisible because the definition of "deliver" set out various means of committing the singular offense of "delivering a controlled substance," rather than distinct elements of separate offenses. *Id.* at 573. The Texas statute defining "delivery" explicitly stated that the term included mere "offers to sell." Thus, defendant's conviction by virtue of "offering to sell" a controlled substance did not fall within the Guidelines' definition of "controlled substance offense" in § 4B1.2(b). *Id.* at 572. Therefore, the court held that "[t]his 'mismatch of elements' means that Hinkle's conviction for the knowing delivery of heroin is not a controlled substance offense under the Guidelines. That prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision, which is § 4B1.1." *Id.*

However, not only is *Hinkle* not binding precedent on this Court, it is distinguishable from the instant case and does not support a conclusion that the meaning of "delivery" in Ark. Stat. Ann. § 5-64-401(a) is necessarily broader than in the federal equivalent. In *Hinkle*, the prior conviction under the Texas statute defined "delivery" of drugs to include an "offer to sell" them. *Hinkle*, 832 F.3d at 572–73. Here, unlike the Texas law in *Hinkle*, the Arkansas statute makes no mention of offers to sell. In fact, Arkansas' statutory definition of delivery is functionally identical to the federal provision. *Compare* Ark. Stat. Ann. § 5-64-101(f) (defining delivery as "the actual,

constructive, or attempted transfer from one person to another of a controlled substance or counterfeit substance in exchange for money or anything of value, whether or not there is an agency relationship") *with* 21 U.S.C. § 802(8) (defining delivery as "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship"). *See United States v. Pittman*, 736 F. App'x 551, 555 (6th Cir. 2018).

Accordingly, because the Kentucky statute is not overly broad, Arkansas' statutory definition of delivery does not include mere offers to sell, and because Defendant has not identified any case in which either statutory provision has been so interpreted, the Court concludes that Defendant was a career offender within the meaning of U.S.S.G. § 4B1.2(b). Therefore, the Court finds that Defendant failed to show a disparity exists between his actual sentence and the sentence he would receive if he were convicted today.

Fourth, Defendant emphasizes his post-conviction rehabilitation record and argues that his rehabilitation and proposed release plan that includes an employment opportunity, housing, and family support weigh in favor of compassionate release. [DN 60 at 216–15]. Many courts across the country have found that substantive evidence of rehabilitation alongside other factors like the length of defendant's sentence, disparity between those sentenced for similar crimes before and after the First Step Act, and the dangers of COVID-19 to the defendant constitute extraordinary and compelling reasons warranting compassionate release. *See, e.g.*, *United States v. Taniguchi*, No. 2-00-CR-50, 2020 WL 6390061, at *5 (S.D. Ohio Nov. 2, 2020) (finding that amendments to § 924(c), defendant's rehabilitation, defendant's health problems that increase his risk of complications from COVID-19, and the amount of time that the defendant has been incarcerated were extraordinary and compelling reasons for release); *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *4 (E.D. Mich. Aug. 13, 2020) (finding that the defendant's rehabilitation,

his youth at the time of sentence, the length of his sentence, and the disparity between those sentenced before and after the First Step Act constituted extraordinary and compelling reasons); *United States v. Pollard*, No. 10-633, 2020 WL 4674126, at *7 (E.D. Pa. Aug. 12, 2020) (finding extraordinary and compelling reasons based on "the dramatic difference in the sentence Pollard would face if charged today, the evidence of rehabilitation and productive use of time while incarcerated, his stated plans for gainful employment upon release, and his lack of a prior criminal history"); *United States v. O'Bryan*, No. 96-10076-03, 2020 WL 869475, at *2 (D. Kan. Feb. 21, 2020) (holding that the defendant's rehabilitation and the First Step Act's changes to § 924(c) constitute extraordinary and compelling reasons); *United States v. Ezell*, No. 02-815-01, ––– F.Supp.3d ––––, ––––, 2021 WL 510293, at *4 (E.D. Pa. Feb. 11, 2021) (same).

However, the instant case is distinguishable from the facts in the cases cited above. Here, Defendant has failed to establish a disparity in his sentence from those sentenced today or that he was incorrectly sentenced as a career offender. Defendant has also not alleged that he is at an increased risk of contracting COVID-19 or of suffering from severe complications from the virus. In its response, the Government argues that "a career offender's post-conviction rehabilitation is neither extraordinary nor compelling." [DN 62 at 225]. The Court agrees. Defendant's claim that his post-conviction rehabilitation supports his compassionate release request is not extraordinary and compelling because the Court cannot find that Defendant's good behavior and programming is so uncommon that is qualifies as "extraordinary" or so forceful that it is "compelling." *See United States v. Powell*, No. 2:12-cr-20052-2, 2021 WL 613233, at *3 (E.D. Mich. Feb. 17, 2021). After all, Defendant is a "career offender" with an extensive criminal history. [DN 28 at 63–68]. Thus, "the fact that Defendant is thriving in prison, away from any access to drugs, underscores

the need for the sentence that the Court imposed. . ." *Powell*, at *3 (quoting *United States v. Spencer*, No. 1:15-cr-375, 2020 WL 3047439, at *5 (N.D. Ohio June 8, 2020)).

Accordingly, the Court finds that Defendant has failed to establish the existence of extraordinary and compelling circumstances that warrant his release under 18 U.S.C. § 3582(c)(1)(A). Moreover, even if Defendant were statutorily eligible for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), the Court finds that compassionate release would not be appropriate under 18 U.S.C. § 3553(a).

### III. 18 U.S.C. § 3553(a) Factors

Considering the totality of Defendant's circumstances, Defendant's compassionate release under 18 U.S.C. § 3582(c)(1)(A) is not warranted. Nonetheless, even though the Court has found Defendant is not entitled to compassionate release, the Court will weigh the sentencing factors set forth in 18 U.S.C. § 3553(a), to determine whether Defendant's sentence should be reduced. *United States v. Willis*, 382 F.Supp.3d 1185, 1188 (D.N.M. 2019). Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

>    (3) the kinds of sentences available;
>
>    (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
>    (5) any pertinent policy statement . . . by the Sentencing Commission;
>
>    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>    (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Here, Defendant pled guilty to two counts of knowingly and intentionally possessing with the intent to distribute and distributing cocaine base, and one count of knowingly and intentionally possessing with the intent to distribute a substance containing cocaine base. [DN 27]. He was sentenced to a term of 188 months imprisonment and four years supervised release. Currently, Defendant has served approximately 106 months (or 56 percent) of his sentence. The Government points to Defendant's status as a career offender and his criminal history as evidence that Defendant's "history and characteristics" and the "nature and circumstances" of his crimes weigh against relief. [DN 62 at 225]. Defendant's criminal history includes possession with intent to deliver cocaine base and/or trafficking in cocaine base on three different occasions within a three-month period in 2004. [DN 28 at 64–66]. As a result, Defendant has three prior felony drug convictions before he committed the instant crimes. Accordingly, the Court finds that the nature and circumstances of the present offense and Defendant's history and characteristics do not support relief. Therefore, Defendant's motion must be denied.

## CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that Defendant's Motion Seeking Relief under 18 U.S.C. § 3582(c)(1)(A), [DN 58], is **DENIED**, Defendant's subsequent Motion

Seeking Relief under 18 U.S.C. § 3582(c)(1)(A), [DN 60], is **DENIED**, and Defendant's Motion for Default Judgment, [DN 63], is **DENIED**.

    **IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 17, 2021

CC: **Marcus Proctor**
13765-033
MANCHESTER
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 4000
MANCHESTER, KY 40962
PRO SE